UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD D. MECUM,

　　　　　　　Plaintiff,

　　　　v.

WELLS FARGO BANK, N.A., et al.,

　　　　　　　Defendants.

CASE NO. C15-1302JLR

ORDER

## I.　　INTRODUCTION

This matter comes before the court on Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Deutsche Bank National Trust Company's ("Deutsche") partial motion to dismiss (Wells Mot. (Dkt. # 8)), and Defendant Quality Loan Service Corporation of Washington's ("Quality") motion for judgment on the pleadings (Quality Mot. (Dkt. # 17)).  The court has reviewed the motions, all submissions filed in support thereof and opposition thereto, the relevant portions of the record, and the applicable law.

ORDER- 1

1    Being fully advised,[1] the court GRANTS IN PART and denies in part Wells Fargo and

2    Deutsche's partial motion to dismiss, DENIES Quality's motion for judgment on the

3    pleadings, and DISMISSES WITHOUT PREJUDICE and with leave to amend the

4    portion of Plaintiff Edward Mecum's complaint alleging a negligence claim against

5    Wells Fargo.

6                           **II.    BACKGROUND[2]**

7          This case concerns the events leading up to a foreclosure sale of Mr. Mecum's

8    home, which Quality conducted on June 21, 2013. (*See* Compl. (Dkt. # 1-2)

9    ¶¶ 3.27-3.28.) Mr. Mecum purchased a home located at 842 Big Tree Drive, NW,

10   Issaquah, WA 98027 ("the Property") in 2007 with a loan from Wells Fargo. (*See id.*

11   ¶¶ 3.1-3.2.) In 2011, Mr. Mecum defaulted on that loan but received a loan modification

12   that cured his default. (*See id.* at ¶ 3.2; Wells Mot. at 3-4.) Mr. Mecum's loan

13   modification reduced his monthly payment by approximately $100.00. (Compl. ¶ 3.2.)

14   Six months after receiving the loan modification, Mr. Mecum again defaulted on his

15   home loan with Wells Fargo. (*Id.*) In January 2012, following his second default, Mr.

16   Mecum applied for another loan modification. (*Id.* ¶ 3.3.) Over the course of

17   approximately 18 months, Wells Fargo requested Mr. Mecum resubmit his application

18   and supporting documents for various reasons. (*Id.*)

19   _____

20        [1] No party has asked for oral argument concerning this motion, and the court deems it to
21   be unnecessary. *See* Local Rules W.D. Wash. LCR 7(b)(4).

22        [2] Consistent with the legal standard applicable to the pending motions, the court bases
     this factual background on the allegations in Mr. Mecum's complaint.

1    In October 2012, Quality recorded a notice of trustee's sale at Wells Fargo's

2  direction. (*See id.* ¶ 3.4.) Quality set the original sale date for February 22, 2013, but

3  postponed the sale until June 21, 2013, while Mr. Mecum continued his efforts to

4  complete his modification application with Wells Fargo. (*Id.*) In May 2013, Mr.

5  Mecum's single point of contact at Wells Fargo deemed his modification application

6  complete. (*Id.* at ¶ 3.5.) As a result, the Wells Fargo contact "forwarded [Mr. Mecum's

7  application] on for review by underwriting." (*Id.*) However, Wells Fargo continued to

8  ask for additional documents, which Mr. Mecum promptly provided when possible. (*See

9  id.* ¶¶ 3.11.)

10    On May 13, 2013, Wells Fargo told Mr. Mecum that "the foreclosure had been

11  suspended" and that Sharon Scharff was his new point of contact for his modification

12  application. (*Id.* ¶ 3.12.) At that time, Mr. Mecum believed Wells Fargo suspended the

13  foreclosure because of his completed loan modification application. (*Id.*) On May 14,

14  2013, however, Wells Fargo told Mr. Mecum that it cancelled his loan modification

15  application because an individual on his account filed for bankruptcy. (*See id.* ¶ 3.13.)

16  Neither Mr. Mecum nor his wife, who Mr. Mecum implies were the only two people

17  properly on his account, had filed for bankruptcy. (*Id.*) Instead, Wells Fargo apparently

18  had erroneously added an unrelated individual to Mr. Mecum's account. (*See id.*) At that

19  time, Mr. Mecum believed he was unable to "discuss any work-out options" with Wells

20  Fargo because of the bankruptcy attached to his account. (*Id.* ¶ 3.15.) Mr. Mecum

21  unsuccessfully challenged his bankruptcy status several times over the following three

22  weeks. (*See id.* ¶¶ 3.13-3.15.)

1     On June 8, 2013, Wells Fargo called Mr. Mecum to ask if he was "willing to seek

2   a work-out option for the loan," as Wells Fargo no longer associated his account with a

3   bankruptcy.  (*Id.* ¶ 3.16.)  Pursuant to the instructions he received during this phone call,

4   Mr. Mecum made several unsuccessful attempts to reach Ms. Scharff to discuss a

5   "work-out option."  (*Id.*)  On June 17, 2013, Mr. Mecum successfully contacted Ms.

6   Scharff, who informed him "that Wells Fargo had determined that he hadn't filed

7   bankruptcy and that the foreclosure process could continue with a sale date of June 21,

8   2013."  (*Id.* ¶ 3.17.)  Ms. Scharff transferred Mr. Mecum's call and he ultimately reached

9   a representative from the "7-Day Team," who took Mr. Mecum's information and told

10  him someone from Wells Fargo would contact him.  (*Id.*)

11    The next day, June 18, 2013, Wells Fargo told Mr. Mecum that he would have to

12  resubmit the request for mortgage assistance forms, and Mr. Mecum faxed those forms to

13  Wells Fargo that evening.  (*Id.* ¶ 3.18.)  When Mr. Mecum called Wells Fargo on June

14  20, 2013, a representative told him that Wells Fargo needed additional documents and

15  that his profit and loss statement needed to be submitted with a different title.  (*Id.*

16  ¶ 3.19.)  Mr. Mecum faxed those documents to Wells Fargo later that morning.  (*Id.*)

17  When Mr. Mecum called that afternoon to confirm receipt of the documents, Wells Fargo

18  told him that the documents would be scheduled for review, but the review would most

19  likely occur the next morning.  (*Id.*)  Mr. Mecum explained the urgency of the document

20  review due to the trustee's sale scheduled for the next day, and the representative assured

21  him that Wells Fargo would review the documents prior to the sale.  (*Id.*)

22

1    Early on June 21, 2013, the morning of the scheduled trustee's sale, a

2    representative from Wells Fargo's "7-Day Team" informed Mr. Mecum that Wells Fargo

3    would not recommend postponement of the scheduled trustee's sale "due to the timing of

4    the review and because documents were incomplete." (*Id.* ¶ 3.20.)  Mr. Mecum then

5    called Wells Fargo's "Office of the President / Executive Complaints" and spoke with a

6    representative who "agreed to advocate" for Mr. Mecum.  (*Id.* ¶ 3.21.)

7    Mr. Mecum also called Quality, the trustee executing the foreclosure sale, multiple

8    times early on the morning of the sale. (*See id.* ¶¶ 3.22-3.23.)  Quality initially told him

9    that it did not "have any power to postpone the sale of the property because that has to be

10   done by the bank." (*Id.* ¶ 3.22.)  Mr. Mecum then spoke with another representative at

11   Quality who suggested that she may "be able to get the sale postponed a week, but would

12   need to 'run it by the legal team.'" (*Id.* ¶ 3.23.)  Mr. Mecum called a third time and told

13   an attorney for Quality that a representative from Wells Fargo's Office of the President

14   was "advocating for him on [Wells Fargo's] end." (*Id.*)  The attorney asked for the Wells

15   Fargo representative's phone number and told Mr. Mecum she would "get back to him

16   shortly" after she got "Wells Fargo's approval to postpone the sale." (*Id.*)

17   The attorney for Quality later emailed Mr. Mecum to explain that "Wells Fargo

18   had denied his request to postpone the sale of his home and the sale would proceed as

19   scheduled." (*Id.*; *see also id.* at 25, Ex. 2 ("Quality Email") ("Please be advised that

20   Wells Fargo has denied your request that the pending Trustee's sale set for today be

21   postponed.  Based on this today's sale will proceed unless we are instructed otherwise or

22   are restrained by a Court order or a BK stay.").)  The Wells Fargo representative also

1  called Mr. Mecum and explained that "the executive team" denied Mr. Mecum's request

2  to postpone the sale because Mr. Mecum failed to make payments for the 12 consecutive

3  months following his initial loan modification. (Compl. ¶ 3.24.) The trustee's sale

4  occurred on June 21, 2013, as scheduled. (*See id.*) However, "[n]o bidders placed a bid

5  on the [P]roperty and Wells Fargo took it back." (*Id.*)

6        On June 22, 2015, Mr. Mecum filed a complaint in King County Superior Court

7  against Wells Fargo, as the servicer of his loan; Deutsche, as the potential holder of the

8  mortgage note; and Quality, in its role as trustee of the deed of trust. (*See id.* ¶¶ 3.2, 3.4,

9  4.5.) On August 17, 2015, Wells Fargo and Deutsche removed the case to this court,

10  with Quality's consent. (Not. of Rem. (Dkt. # 1) at 3.) On August 27, 2015, Wells Fargo

11  and Deutsche filed a partial motion to dismiss under Federal Rule of Civil Procedure

12  12(b)(6). (*See generally* Wells Mot.) On November 30, 2015, Quality filed its motion

13  for judgment on the pleadings under Rule 12(c). (*See generally* Quality Mot.) The court

14  addresses these motions in turn.

15                            **III.    ANALYSIS**

16  **A.    Legal Standards**

17        1.    <u>Failure to State a Claim under Rule 12(b)(6)</u>

18        When considering a motion to dismiss under Rule 12(b)(6), the court construes the

19  complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v.*

20  *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept

21  all well-pleaded allegations of material fact as true and draw all reasonable inferences in

22  favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658,

1   661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient

2   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

3   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

4   544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

5   2010).  "A claim has facial plausibility when the plaintiff pleads factual content that

6   allows the court to draw the reasonable inference that the defendant is liable for the

7   misconduct alleged."  *Iqbal*, 556 U.S. at 678.

8          The court, however, need not accept as true a legal conclusion presented as a

9   factual allegation.  *Id.*  Although the pleading standard announced by Federal Rule of

10  Civil Procedure 8 does not require "detailed factual allegations," it demands more than

11  "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*,

12  550 U.S. at 555).  A pleading that offers only "labels and conclusions or a formulaic

13  recitation of the elements of a cause of action" will not survive a motion to dismiss under

14  Rule 12(b)(6).  *Id.*

15          2.   Judgment on the Pleadings under Rule 12(c)

16          Under Rule 12(c), a party may move for judgment on the pleadings after the

17  pleadings are closed.  *See* Fed. R. Civ. P. 12(c).  A court "must accept all factual

18  allegations in the complaint as true and construe them in the light most favorable to the

19  non-moving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation

20  omitted); *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d

21  919, 925 (9th Cir. 2011).  "Judgment on the pleadings is properly granted when there is

22  no issue of material fact in dispute, and the moving party is entitled to judgment as a

1  matter of law." *Fleming*, 581 F.3d at 925; *see Lyon v. Chase Bank USA, N.A.*, 656 F.3d

2  877, 883 (9th Cir. 2011).

3        When a Rule 12(c) motion is used as a vehicle for dismissal after an answer has

4  been filed, or when it is functionally equivalent to a Rule 12(b)(6) motion, the same

5  standard applies to both. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th

6  Cir. 1989); *see Seabright Ins. Co. v. Matson Terminals, Inc.*, 828 F. Supp. 2d 1177 (D.

7  Haw. 2011) (observing that the motions differ in time of filing but are otherwise

8  functionally identical and require the same legal standard).  Dismissal for failure to state

9  a claim "is proper if there is a 'lack of a cognizable legal theory or the absence of

10  sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*,

11  646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901

12  F.2d 696, 699 (9th Cir. 1988)).

13  **B.**  **Wells Fargo and Deutsche's Partial Motion to Dismiss**

14        Wells Fargo and Deutsche challenge two aspects of Mr. Mecum's complaint:  his

15  negligence claim against Wells Fargo[3] and his request for relief in the form of

16  invalidating the trustee's sale of the Property.  (Wells Mot. at 3.)  The court first

17  discusses the negligence cause of action and then addresses whether dismissal of Mr.

18  Mecum's request to set aside the foreclosure sale is appropriate.

19  _____

20     [3] Mr. Mecum's response implies that Deutsche also faces a negligence claim in this
matter. (Resp. to Wells (Dkt. # 12) at 13 ("Deutsche Bank is complicit in any violations of law

21  or any actions of Wells Fargo . . . .").)  However, his complaint alleges negligence against only
Wells Fargo and Quality.  (Compl. at 15 ("Second Cause of Action: Defendants Wells Fargo and

22  [Quality] were Negligent in their Conduct of Loan Modification and Foreclosure Sale").)  Thus,
Deutsche does not face a negligence claim in this matter.

1        1.   Negligence Claim against Wells Fargo

2        To prove negligence, Mr. Mecum must show the existence of a duty, a breach of

3   that duty, damages, and that the breach of duty caused the damages.  *See, e.g., Lowman v.*

4   *Wilbur*, 309 P.3d 387, 389 (Wash. 2013).  "The threshold determination in a negligence

5   action is whether a duty of care is owed by the defendant to the plaintiff."  *Taylor v.*

6   *Stevens Cty.*, 759 P.2d 447, 449 (Wash. 1988).

7        Mr. Mecum references a duty to "properly handle Plaintiff's file and the

8   modification process," but his complaint does not identify the source of this alleged duty.

9   (Compl. ¶ 4.7.)  Wells Fargo argues that irrespective of whether a duty exists, the waiver

10  provision of the Washington Deed of Trust Act ("DTA"), RCW 61.24.127, bars Mr.

11  Mecum's negligence claim.  (Wells Mot. at 8.)  In response, Mr. Mecum identifies

12  Regulation X, a federal regulation governing the mortgage lending process, as the source

13  of Wells Fargo's duty.  (Resp. to Wells (Dkt. # 12) at 12); *see also* 12 C.F.R. § 1024.1, *et*

14  *seq.*  As to waiver, Mr. Mecum argues that Wells Fargo's actions were "so egregious"

15  that his negligence claim should go forward.[4]  (Resp. to Wells at 12-13.)

16

17  _____

18  [4] Mr. Mecum's response includes a declaration in which Mr. Mecum attests to the truth
    of the allegations in his complaint. (Mecum Decl. (Dkt. # 13).)  To decide a motion to dismiss
    for failure to state a claim, the court can look only to the allegations in the complaint, but the

19  court presumes the truth of the allegations and draws all reasonable inferences in favor of Mr.
    Mecum.  *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (quoting *Farr v.*

20  *United States*, 990 F.2d 451, 454 (9th Cir. 1993)) ("Review is limited to the complaint; 'evidence
    outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion.'"); Fed.

21  R. Civ. P. 12(d) (providing that on a Rule 12(b)(6) motion, the court may either exclude evidence
    outside the pleadings or, upon notice to both parties and a chance to present evidence, reconstrue

22  the motion as a summary judgment motion).  The court does not convert the motion to dismiss
    into a motion for summary judgment and instead declines to consider Mr. Mecum's declaration.

1        Mr. Mecum argues that Regulation X imposes a duty on Wells Fargo to properly

2  conduct the loan modification process for his mortgage.  (*See* Compl. ¶¶ 3.7, 3.10, 4.7.)

3  Regulation X provides that a loan servicer must exercise "reasonable diligence" in

4  obtaining the necessary information to establish a "complete loss mitigation application."

5  *See* 12 C.F.R. § 1024.41.  However, this court has already concluded that the Home

6  Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. §§ 1461-70, and related regulations

7  preempt a state law claim for negligence premised on a bank's method of processing loan

8  modifications.  *See Johnson v. JP Morgan Chase Bank N.A.*, No. C14-5607RJB, 2015

9  WL 4743918, at *8 (W.D. Wash. Aug. 11, 2015).

10        Congress enacted HOLA to "restore public confidence by creating a nationwide

11  system of federal savings and loan associations to be centrally regulated according to

12  nationwide 'best practices.'"  *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th

13  Cir. 2008).  The Ninth Circuit views HOLA and the related regulations as a "radical and

14  comprehensive response to the inadequacies of the existing state system, and so pervasive

15  as to leave no room for state regulatory control."  *Id.* (internal quotation marks omitted)

16  (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257 (9th Cir.

17  1979)).  Consequently, the general presumption against preemption of state laws is

18  inapplicable in the context of national banking.  *Silvas*, 514 F.3d at 1005.

19        Moreover, under HOLA, the Office of Thrift Supervision promulgated 12 C.F.R.

20  § 560.2, a regulation that expressly preempts state laws that fall within certain categories.

21  *Id.*  Those categories include any state law affecting the "[p]rocessing, origination,

22  servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R.

1  § 560.2(b)(10).  The regulation also identifies tort law among the categories of state laws

2  that are not preempted "to the extent that they only incidentally affect the lending

3  operations of Federal Savings associations."  12 C.F.R. § 560.2(c)(4).  This court has

4  recently concluded that a negligence claim "affects" lending operations when it is

5  premised on duties imposed by federal lending regulations, such as Regulation X.  *See*

6  *Johnson*, 2015 WL 4743918, at *8.  Thus, Regulation X cannot be the source of Wells

7  Fargo's duty.[5]  *See Silvas*, 514 F.3d at 1004-05; *Johnson*, 2015 WL 4743918, at *8.

8      Mr. Mecum therefore fails to identify a duty owed by Wells Fargo that could form

9  the basis of his negligence claim.[6]  In other words, Mr. Mecum's negligence claim

10  against Wells Fargo lacks a cognizable legal theory on which it can proceed.[7]  *See*

11  *Balistreri*, 901 F.2d at 699 (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

12  533-34 (9th Cir. 1984)) ("Dismissal can be based on the lack of a cognizable legal theory

13  or the absence of sufficient facts alleged under a cognizable legal theory.").  Thus, the

14

15  _____

16  [5] Mr. Mecum's claims against Wells Fargo and Deutsche for violating Regulation X
remain intact, and neither Wells Fargo nor Deutsche challenge that claim.  (*See* Compl.

17  ¶¶ 4.1-4.5; Wells Mot. at 3.)

18  [6] Mr. Mecum also fails to identify a duty that the DTA imposes upon Wells Fargo.  (*See
generally* Compl.; Resp. to Wells at 10-13); *see also* RCW 61.24.010 *et seq.*; *Bain v. Metro.
Mortg. Grp. Inc.*, No. C09-0149JCC, 2010 WL 891585, at *4 (W.D. Wash. Mar. 11, 2010)

19  (explaining that a plaintiff must allege that a defendant was a trustee, as opposed to a lender,
before the DTA imposes duties upon that defendant).  Because the court concludes that Mr.

20  Mecum has failed to state a negligence claim against Wells Fargo, the court declines to consider
whether he waived any such claim.  (*See* Wells Mot. at 8.)

21  [7] Mr. Mecum acknowledges that his complaint, which was based on the "more relaxed"
pleading standard in Washington state courts, may not satisfy the pleading standards of this

22  court.  (Resp. to Wells at 9.)

1  court grants Wells Fargo and Deutsche's motion to dismiss the negligence claim against

2  Wells Fargo.

3         2.    <u>Prayer for Relief in the Form of Setting aside the Foreclosure Sale</u>

4         Wells Fargo and Deutsche argue that "[Mr.] Mecum's claim to invalidate the sale

5  is barred as a matter of law," so "[t]he Court should . . . dismiss this claim with

6  prejudice." (Wells Mot. at 7.)  However, invalidating a trustee's sale is a prayer for

7  relief, not a claim. (*See* Compl. at 19.)  Because a prayer for relief is a remedy and not a

8  claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle

9  to challenge the requested relief.[8]  *See, e.g., Jordan v. United States*, No. 15-CV-1199

10  BEN (NLS), 2015 WL 5919945, at *2-3 (S.D. Cal. Oct. 8, 2015) ("A prayer for damages

11  constitutes a remedy, not a claim within the meaning of Rules 8(a)(2) or 12(b)(6).  Thus,

12  [a] prayer for relief does not provide any basis for dismissal under Rule 12.");

13  *Oppenheimer v. Sw. Airlines Co.*, No. 13-CV-260-IEG (BGS), 2013 WL 3149483, at

14  *3-4 (S.D. Cal. June 17, 2013) ("[T]he availability of [a certain type of relief does not]

15  control or even pertain to the sufficiency of any claim."); *Monaco v. Liberty Life Assur.*

16  *Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007) ("[A]

17  complaint is not subject to a motion to dismiss for failure to state a *claim* under Rule

18  _____

19      [8] In similar circumstances, some courts have converted Rule 12(b)(6) motions to Rule
12(f) motions to strike. *See, e.g., Videckis v. Pepperdine Univ.*, No. CV 15-00298 DDP (JCx),
20  2015 WL 8916764, at *9 (C.D. Cal. Dec. 15, 2015).  The court would also deny a motion to
strike, however, because Wells Fargo and Deutsche have not shown that Mr. Mecum's prayer for
21  relief is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f); *see also*
*Freeman v. Alta Bates Summit Med. Ctr. Campus*, No. C 04-2019 SBA, 2004 WL 2326369, at
22  *2 (N.D. Cal. Oct. 12, 2004) (citing 61 Am. Jur. 2d *Pleading* § 505 (1999)) ("[M]otions to strike
are rarely granted in the absence of a showing of prejudice to the moving party.").

1   12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law."

2   (emphasis in original)).[9]

3       Mr. Mecum has not provided any legal theory to ground his prayer to invalidate the

4   foreclosure sale. (*See* Resp. to Wells at 11; *see generally* Compl.) Invalidating a

5   trustee's sale without authority contradicts the language of the DTA and undermines one

6   of its purposes. *See* RCW 61.24.050(1) ("After a trustee's sale, no person shall have any

7   right, by statute or otherwise, to redeem the property sold at the trustee's sale."); *see also*

8   *Plein v. Lackey*, 67 P.3d 1061, 1065 (Wash. 2003) (identifying a goal of the DTA as

9   ensuring "that the process should promote stability of land titles"). Wells Fargo and

10  Deutsche's motion and Mr. Mecum's response highlight this apparent incongruity

11  between Mr. Mecum's claims and his prayer for relief. (*See* Wells Mot. at 6-7; Resp. to

12  Wells at 10-11.) However, because a Rule 12(b)(6) motion is an improper vehicle to

13  challenge the requested relief, the court denies the portion of Wells Fargo and Deutsche's

14  motion to dismiss challenging Mr. Mecum's prayer for relief.

15  **C.    Quality's Motion for Judgment on the Pleadings**

16      Mr. Mecum alleges two causes of action against Quality: negligence and violation

17  of Washington's Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.* (*See*

18

19  _____

20      [9] Rule 54 further illustrates why a Rule 12(b)(6) motion is not a proper vehicle for challenging a prayer for relief. *See* Fed. R. Civ. P. 54(c) ("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its

21  pleadings."); *see also Oppenheimer*, 2013 WL 3149483, at *4 n.1 (citing *Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008) ("[T]he fundamental legal error in this case may have been the

22  parties' and the district court's shared assumption that a prayer for [a certain type of relief] had to appear in the complaint in order to sustain an award of such damages.")).

1 Compl. at 15-16.)  Quality moves for judgment on the pleadings on both of Mr. Mecum's

2 causes of action against it.  (Quality Mot.)  The court addresses each cause of action

3 against Quality in turn.

4     1.  <u>Negligence Claim against Quality</u>

5     To prove negligence, Mr. Mecum must show duty, breach, causation, and

6 damages.  *See, e.g.*, *Lowman*, 309 P.3d at 389.  Quality challenges Mr. Mecum's

7 negligence claim on two grounds.  Quality argues that it did not breach any duty to Mr.

8 Mecum during the course of the foreclosure proceedings and trustee's sale.  (Quality

9 Mot. at 4.)  Alternatively, Quality argues that Mr. Mecum's failure to seek a presale

10 injunction resulted in waiver of any negligence claim he might bring.  (*Id.*)

11     *a.  Quality's Breach of Duty*

12     Quality argues it did not breach any duty it owed to Mr. Mecum because it

13 appropriately initiated the foreclosure proceedings when Mr. Mecum materially defaulted

14 on his loan and there was no defect in the trustee's sale.[10]  (*See id.* at 3.)  However, Mr.

15 Mecum does not challenge those aspects of the foreclosure process.  (*See generally* Resp.

16 _____

17    [10] Quality's motion for judgment on the pleadings does not challenge the duty and
damages elements of Mr. Mecum's negligence claim.  (*See* Quality Mot. at 4-5.)  Quality raises
18 the causation element of Mr. Mecum's negligence claim by arguing that "Plaintiff has failed to
plead a breach of that duty by Quality, and proximate damages flowing therefrom," without
19 further elaboration.  (*Id.* at 4.)  The court considers this passing remark to insufficiently raise
causation and accordingly addresses only the breach element of Mr. Mecum's claim.  *See Coos*
20 *Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 811 n.15 (9th Cir. 2008) (explaining that
the district court properly declined to consider an argument in its analysis of a motion to dismiss
21 when "[s]ave for expressing its disagreement with [the opposing party's] conclusions, [the
plaintiff] does not explain how th[e] provision was violated"); *United States v. Kimble*, 107 F.3d
22 712, 715 n.2 (9th Cir. 1997) (deeming an argument "to have been abandoned" where the party
failed to "coherently develop[ ]" it in his briefs).

1   to Quality (Dkt. # 19); *see also* Compl. ¶¶ 4.8-4.9.)  Instead, Mr. Mecum argues that

2   Quality breached its duty by failing to exercise independent discretion in deciding not to

3   postpone the trustee's sale.  (Resp. to Quality at 12.)

4         The DTA creates a three-party mortgage system involving the lender, the

5   borrower, and a trustee.  *See, e.g.*, *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 38

6   (Wash. 2012).  This system empowers a trustee to execute a nonjudicial foreclosure when

7   a borrower defaults on his or her mortgage.  *See Klem v. Wash. Mut. Bank*, 295 P.3d

8   1179, 1187-88 (Wash. 2013) [hereinafter *Klem II*].  The Washington Supreme Court

9   views the trustee's authority under the DTA as a "tremendous power to vest in anyone's

10  hands."  *Id.* at 1188.  Because the trustee has such great power, the Court has also made

11  clear that "common law and equity requires that trustee to be evenhanded to both sides

12  and to strictly follow the law."  *Id.* (citing *Albice v. Premier Mortg. Servs. of Wash., Inc.*,

13  276 P.3d 1277, 1282 (Wash. 2012)).  Furthermore, the Washington Supreme Court "has

14  frequently emphasized that the [DTA] 'must be construed in favor of borrowers because

15  of the relative ease with which lenders can forfeit borrowers' interests and the lack of

16  judicial oversight in conducting nonjudicial foreclosure sales.'"  *See id.* (quoting *Udall v.

17  T.D. Escrow Servs., Inc.*, 154 P.3d 882, 890 (Wash. 2007)).

18        Mr. Mecum alleges that Quality's duty to exercise independent discretion is

19  implicit in a trustee's duty under the DTA.  (Compl. ¶¶ 4.8-4.9.)  *Klem II* acknowledges a

20  trustee's duty to exercise independent discretion as part of its duty under the DTA to

21  exercise good faith in performing mortgage foreclosures.  *See* 295 P.3d at 1189.  When it

22

1 | is consistent with this duty, the trustee has the power to postpone a sale for up to 120

2 | days "for any cause the trustee deems advantageous."  RCW 61.24.040(6).

3 |      In *Klem II*, the Washington Supreme Court concluded that a trustee's failure to

4 | "exercise its independent discretion as an impartial third party with duties to both parties"

5 | satisfied the CPA's requirement of an unfair or deceptive act.  *Klem II*, 295 P.3d at 1190.

6 | Although *Klem II* addressed a CPA claim, the Washington Supreme Court more

7 | generally analyzed a trustee's duty under the DTA.[11]  *Id.* at 1187-90 (discussing a

8 | violation of a trustee's duty under the DTA as a way the first element of a CPA claim—

9 | an unfair or deceptive act or practice—can be satisfied).  The *Klem II* opinion

10 | demonstrates that a trustee's failure to exercise independent discretion constitutes a

11 | breach of the trustee's duty under the DTA.  *See id* at 1190.

12 |      Mr. Mecum alleges that when he first called Quality to ask it to postpone the

13 | foreclosure sale, Quality told him that it does not "have any power to postpone the sale of

14 | the property because that has to be done by the bank."  (Compl. ¶ 3.22.)  When Mr.

15 | Mecum called Quality again that morning, an attorney for Quality told him that she

16 | would "get back to him shortly" after she contacted Wells Fargo, and that she "needed to

17 | get Wells Fargo's approval to postpone the sale of the property."  (*Id.* ¶ 3.23.)  The

18 | attorney for Quality followed up with Mr. Mecum via email, explaining that "Wells

19 | Fargo had denied his request to postpone the sale of his home."  (*Id.* ¶ 3.23; *see also*

20 | 

---

21 |     [11] Thus, even though Mr. Mecum's claim for negligence differs from the CPA claim in

22 | *Klem II*, the rationale expressed in *Klem II* is applicable to assessing the DTA's applicability to the duty and breach elements of a negligence claim.

1    Quality Email ("Please be advised that Wells Fargo has denied your request that the

2    pending Trustee's sale set for today be postponed.  Based on this today's sale will

3    proceed unless we are instructed otherwise or are restrained by a Court order . . . .").)

4           The court can reasonably infer from these allegations that Quality deferred to

5    Wells Fargo in deciding not to postpone the sale.  Deferring to Wells Fargo can constitute

6    a breach of Quality's duty of good faith under the DTA, which is the duty Mr. Mecum

7    argues Quality breached.  Thus, the court denies Quality's motion for judgment on the

8    pleadings because Mr. Mecum adequately alleges breach in his negligence claim.

9           b.    *Waiver of Claims under the DTA*

10          Quality alternatively argues that Mr. Mecum waived his negligence claim.

11   (Quality Mot. at 4.)  Washington courts have held that a borrower waives its ability to

12   contest a foreclosure sale on any grounds once the sale is completed, as long as the

13   borrower "(1) received notice of the right to enjoin the sale, (2) had actual or constructive

14   knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to

15   obtain a court order enjoining the sale." *Plein*, 67 P.3d at 1065 (collecting cases).

16   However, the DTA's statutory waiver applies only "where it is equitable under the

17   circumstances and where it serves the goals of the act." *Albice*, 276 P.3d at 1283.  The

18   goals of the DTA are "(1) that the nonjudicial foreclosure process should be efficient and

19   inexpensive; (2) that the process should result in interested parties having an adequate

20   opportunity to prevent wrongful foreclosure; and (3) that the process should promote

21   stability of land titles." *Plein*, 67 P.3d at 1065.

22

1    Mr. Mecum alleges that Quality did not breach its duty until the day of the sale.

2    (*See* Compl. ¶¶ 3.23, 4.8.)  The statutory waiver, however, requires Mr. Mecum to give

3    Quality a five-day notice of any injunction he seeks.  RCW 61.24.130(2) ("No court may

4    grant a restraining order or injunction to restrain a trustee's sale unless the person seeking

5    the restraint gives five days notice to the trustee . . . .").  Thus, it may be inequitable to

6    conclude that Mr. Mecum waived his negligence claim against Quality because he did not

7    request an injunction premised on actions that did not occur in time for him to timely

8    request an injunction.  *Cf. Bakhchinyan v. Countrywide Bank, N.A.*, No. C13-2273-JCC,

9    2014 WL 1273810, at *6 (W.D. Wash. Mar. 27, 2014).

10    *Klem II* is instructive on this issue as well.[12]  *See Klem II*, 295 P.3d at 1185 n.7.

11    The court in *Klem II* identified "ample reasons why a presale injunction was not an

12

13

14    [12] The defendant in *Klem II* raised the same waiver argument that is before this court.  *See
Klem II*, 295 P.3d at 1185.  The Washington Supreme Court noted that the Washington Court of
Appeals correctly reasoned why the waiver argument should be rejected.  *See Klem II*, 295 P.3d
15    at 1185.  The Court of Appeals explained that where the guardians for the borrower attempted to
contact both the trustee and the bank multiple times in the days leading up to the foreclosure sale
16    and only received word of the bank's refusal to allow the postponement of the sale two days
before the scheduled sale, the failure to enjoin the sale did not waive the borrower's claims
brought post-sale.  *See Klem v. Wash. Mut. Bank*, No. 66252-0-I, 2011 WL 6382147, at *2, *7
17    (Wash. Ct. App. Dec. 19, 2011) (unreported) [hereinafter *Klem I*]; *see also Emp'rs Ins. of
Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider
18    unpublished state decisions, even though such opinions have no precedential value.").  As a
result, the court of appeals concluded:

19

20    Under the circumstances presented in this case, waiver does not apply because the
facts supporting [the borrower's DTA] claims did not fully take place until the
sale itself and could not have been brought in an action to restrain the sale.  One
21    of the requirements for waiver is that a party must have actual or constructive
knowledge of the facts supporting the claim.  Moreover, the language of the
[DTA] requires the grantor to be informed that waiver "of any proper grounds for
22    invalidating the Trustee's sale" may result where it fails to bring a lawsuit to

1   available remedy and thus application of the equitable doctrine of waiver would be

2   inappropriate." *Id.* In that analysis, the Court recognized that the borrower did not have

3   knowledge of the trustee's agreement to defer to the lender until after the sale, and that

4   the notice requirements "may also have made a presale injunction impossible to acquire."

5   *Id.* Because of the apparent inequity in applying a waiver in this case, the court cannot

6   conclude at this stage that Mr. Mecum waived his negligence claim against Quality.

7           Because the court concludes that Mr. Mecum adequately pleaded that Quality

8   breached its duty and cannot conclude at this stage that the DTA's waiver provision

9   applies, the court denies Quality's motion for judgment on the pleadings with respect to

10  Mr. Mecum's negligence claim.

11          2.    CPA Claim against Quality

12          Quality next argues that Mr. Mecum failed to sufficiently plead the elements of a

13  CPA claim. (Quality Mot. at 5-7.) The elements of a CPA claim are that the defendant

14  (1) engaged in an "unfair or deceptive act or practice; (2) occurring in trade or commerce;

15  (3) [which has a] public interest impact; (4) [the plaintiff suffered injury] in his or her

16  business or property; [and] (5) causation." *Klem II*, 295 P.3d at 1185 (quoting *Hangman*

17  *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986)).

18

19  _____

            restrain the sale. Here, [the borrower] did not seek to invalidate the sale. Given
20          our mandate to strictly construe the [DTA] in the borrower's favor, we conclude
            that [the borrower] did not waive its claims.

21  *Klem I*, 2011 WL 6382147, at *7 (citations omitted). Because the borrower faced a
    similar last-minute notice of refusal to postpone the sale as Mr. Mecum alleges, the court
22  finds *Klem I* and *Klem II* persuasive.

1   Quality's motion challenges whether Mr. Mecum has adequately pleaded elements (1),

2   (3), and (5). (*See* Quality Mot. at 5-7.)

3       Quality first argues that Mr. Mecum failed to allege an "unfair or deceptive act"

4   performed by Quality. (*Id.* at 5.) Again, however, Quality's argument overlooks *Klem II*,

5   in which the Washington Supreme Court held that "the practice of a trustee in a

6   nonjudicial foreclosure deferring to the lender on whether to postpone a foreclosure sale

7   and thereby failing to exercise its independent discretion as an impartial third party with

8   duties to both parties is an unfair or deceptive act or practice and satisfies the first

9   element of the CPA." 295 P.3d at 1190. As discussed above, Mr. Mecum adequately

10  alleges that Quality failed to exercise independent discretion. *See supra* § III.C.1.a. The

11  court accordingly rejects Quality's argument as to element (1).

12      Next, Quality challenges whether Mr. Mecum sufficiently pleaded facts

13  supporting the "public interest" element of the CPA claim. (Quality Mot. at 6.) In cases

14  stemming from a private dispute, as here, Washington courts consider four factors when

15  determining whether a plaintiff satisfies the public interest element of the CPA:

16  "(1) whether the defendant committed the alleged acts in the course of his/her business,

17  (2) whether the defendant advertised to the public in general, (3) whether the defendant

18  actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have

19  unequal bargaining positions." *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1108

20  (Wash. 2015) (citing *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009)); *see*

21  *also Hangman Ridge*, 719 P.2d at 537-38 (identifying the test courts use when

22  determining if a plaintiff with a private dispute meets the public interest element of a

1  CPA claim). "The plaintiff need not establish all of the[] factors, and none is

2  dispositive." *Trujillo*, 355 P.3d at 1108. "However the dispute arises, 'it is the likelihood

3  that additional plaintiffs have been or will be injured in exactly the same fashion that

4  changes a factual pattern from a private dispute to one that affects the public interest.'"

5  *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 24 (Wash. Ct. App. 2007) (quoting *Hangman*

6  *Ridge*, 719 P.2d at 538).

7      Mr. Mecum alleges that Quality is involved in many mortgages in Washington and

8  that Quality deferred to the bank in determining not to postpone his foreclosure sale. (*See*

9  Compl. ¶¶ 3.26, 3.30, 4.15.) Quality's determination of whether to postpone a

10  foreclosure sale is an act conducted in the course of its business as trustee. *See Klem II*,

11  295 P.3d at 1188; (Compl. ¶ 3.30.) Moreover, the court can infer that Mr. Mecum had

12  unequal bargaining power with Quality because trustees like Quality are typically

13  appointed and compensated by loan servicers like Wells Fargo. *See Klem II*, 295 P.3d at

14  1188. Borrowers like Mr. Mecum are not involved in the selection of a trustee for the

15  DTA's three-party mortgage relationship, and Mr. Mecum's inability to participate in this

16  process deprives him of bargaining power with Quality. *See id.* Because Quality is

17  involved in many similar business-related transactions in Washington and the borrower in

18  a nonjudicial foreclosure lacks bargaining power with the trustee, the court concludes that

19  Mr. Mecum sufficiently pleaded facts to support the public interest element of his CPA

20  claim. *See Trujillo*, 355 P.3d at 1108.

21      Finally, Quality argues that Mr. Mecum's complaint fails to allege a causal link

22  between the alleged misrepresentation and the purported injury, the fifth element of a

1    CPA claim. (Quality Mot. at 6.) Mr. Mecum's alleged injury is the loss of his home and

2    the time and money he has spent to challenge the sale. (Compl. ¶ 4.16; Resp. to Quality

3    at 16.) Mr. Mecum alleges that Quality proceeded with the foreclosure sale without

4    exercising independent discretion and that the trustee's sale directly resulted in his loss of

5    title to the Property. (*See* Compl. ¶¶ 3.24, 4.8, 4.9.) Thus, the court concludes that Mr.

6    Mecum has sufficiently alleged a causal link between Quality's failure to exercise

7    independent discretion and Mr. Mecum's injury.

8      Because Mr. Mecum's allegations suffice to overcome Quality's challenges to Mr.

9    Mecum's negligence and CPA claims, the court denies Quality's motion.

10 **D.    Leave to Amend**

11      As a general rule, when a court grants a motion to dismiss, the court should dismiss

12    the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

13    1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring

14    amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining

15    whether dismissal without leave to amend is appropriate, courts consider such factors as

16    undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

17    cure deficiencies by amendments previously allowed, undue prejudice to the opposing

18    party by virtue of allowance of the amendment, and futility of amendment. *Foman v.*

19    *Davis*, 371 U.S. 178, 182 (1962).

20      The legal conclusions herein make it unclear whether Mr. Mecum can amend his

21    complaint to state a negligence claim against Wells Fargo. However, Wells Fargo and

22    Deutsche have not made a showing that amendment would be futile, and Mr. Mecum

1  acknowledges that his complaint, which was based on the "more relaxed" pleading

2  standard in Washington state courts, may not meet the pleading standards of this court.

3  (Resp. to Wells at 9.)

4        Accordingly, the court grants Mr. Mecum 14 days from the filing of this order to

5  amend his complaint to remedy the issues identified herein.  To the extent that Mr.

6  Mecum chooses to amend his complaint, he should identify the source of Wells Fargo's

7  duty underlying his negligence claim.  The court may interpret Mr. Mecum's failure to

8  cure the identified deficiencies as an indication that further amendment would be futile.

9  *See Foman*, 371 U.S. at 182.  If Mr. Mecum does not file an amended complaint within

10  14 days, the court will dismiss the negligence claim against Wells Fargo without

11  prejudice and without leave to amend.

12                    **IV.    CONCLUSION**

13        For the foregoing reasons, the court GRANTS IN PART and denies in part Wells

14  Fargo and Deutsche's partial motion to dismiss (Dkt. # 8), DENIES Quality's motion for

15  judgment on the pleadings (Dkt. # 17), and DISMISSES WITHOUT PREJUDICE the

16  portion of Mr. Mecum's complaint alleging a negligence claim against Wells Fargo.  The

17  court GRANTS Mr. Mecum 14 days to amend his complaint to remedy the deficiencies

18  identified herein.

19        Dated this 9th day of March, 2016.

20

21                                        _____

                                          JAMES L. ROBART
22                                        United States District Judge

ORDER- 23