UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDWARD D. MECUM, | CASE NO. C15-1302JLR |
| Plaintiff, | ORDER |
| v. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the court on Defendant Quality Loan Service Corporation of Washington's and Plaintiff Edward D. Mecum's cross-motions for summary judgment. (*See* Quality MSJ (Dkt. # 24); Mecum MSJ (Dkt. # 26).) The court has considered the parties' submissions, the appropriate portions of the record, and the

//

//

//

ORDER- 1

relevant law.[1] Considering itself fully advised, the court GRANTS Quality's motion for summary judgment, DENIES Mr. Mecum's motion for summary judgment, and DISMISSES Mr. Mecum's claims against Quality WITH PREJUDICE.

## II. BACKGROUND[2]

This case concerns the events leading up to a foreclosure sale of Mr. Mecum's home. (*See generally* FAC.) Mr. Mecum purchased a home at 842 Big Tree Drive, NW, Issaquah, WA 98027 in 2007 with a loan from Defendant Wells Fargo Bank, N.A. (*See id.* ¶¶ 3.1-3.2.) In 2011, Mr. Mecum defaulted on that loan, but Wells Fargo agreed to modify his loan to cure the default. (*See id.* at ¶ 3.2.) Six months after receiving the loan modification, Mr. Mecum again defaulted on his home loan with Wells Fargo. (*Id.*) In January 2012, following his second default, Mr. Mecum applied for another loan modification. (*Id.* ¶ 3.3.) Over the course of approximately 18 months, Wells Fargo requested Mr. Mecum resubmit his application and supporting documents for various reasons. (*Id.*)

In October 2012, Quality recorded a notice of trustee's sale at Wells Fargo's direction. (*See id.* ¶ 3.4.) Quality originally set the sale date for February 22, 2013, but

---

[1] Neither Mr. Mecum nor Quality has requested oral argument, and the court finds oral argument unnecessary. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Quality supports its motion for summary judgment primarily by referencing Mr. Mecum's first amended complaint. (*See generally* Quality MSJ.) "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Accordingly, although the motions before the court seek summary judgment, much of the factual background provided by the court is based on Mr. Mecum's operative complaint. (*See* FAC (Dkt. # 23).)

later postponed the sale until June 21, 2013, to permit Mr. Mecum to continue his efforts to complete his modification application with Wells Fargo. (*Id.* ¶¶ 3.4, 3.19.) Although those loan modification efforts were extensive, they did not involve Quality.

Mr. Mecum first contacted Quality at 7:00 a.m. on the morning of June 21, 2013. (*Id.* ¶ 3.25; Mecum Decl. (Dkt. # 27) ¶ 12.) Quality's representative asked Mr. Mecum why the sale should be postponed, and Mr. Mecum described the ongoing discussions and negotiations with Wells Fargo. (FAC ¶ 3.26.) Mr. Mecum indicated that Quality should postpone the sale because Wells Fargo was reviewing whether to grant Mr. Mecum another loan modification, in part due to potential errors by Wells Fargo. (*Id.*) The Quality employee that spoke with Mr. Mecum then called Wells Fargo, which indicated that Mr. Mecum's representation was incorrect—Wells Fargo "would NOT be postponing the sale as the borrower had previously been in a loan mod[ification] and the borrower failed to make 12 payments," and Wells Fargo was "not currently reviewing the borrower for a loan mod[ification]." (Martin Decl. (Dkt. # 25) ¶ 5; Mecum Decl. ¶ 12; *see also* Martin Decl. ¶ 6, Ex. A at 1 (rejecting Mr. Mecum's request that Quality unwind the sale because Quality performed a full inquiry on June 21, 2013, and determined that "it would not exercise its trustee discretion to postpone the sale under these facts"); FAC ¶¶ 3.26-3.27.) Quality then informed Mr. Mecum that the sale would proceed as scheduled, which it did. (Mecum Decl. ¶ 12.)

On June 22, 2015, Mr. Mecum filed a complaint in King County Superior Court against Wells Fargo, as the servicer of his loan; Defendant Deutsche Bank National Trust Company, as the potential holder of the mortgage note; and Quality, in its role as trustee

ORDER- 3

of the deed of trust.  (*See id.* ¶¶ 3.2, 3.4, 4.5.)  On August 17, 2015, Wells Fargo and Deutsche removed the case to this court with Quality's consent.  (Not. of Rem. (Dkt. # 1) at 3.)  On March 9, 2016, the court granted in part and denied in part the various defendants' pleadings-based motions, and Mr. Mecum timely amended his complaint in response to that order.  (3/19/16 Order (Dkt. # 22)).)  Quality subsequently moved for summary judgment, and Mr. Mecum responded by cross-moving for summary judgment.  (Quality MSJ; Mecum MSJ.)  Those motions are now before the court.

### III.   ANALYSIS

**A.   Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" to withstand summary judgment.  *Galen*, 477 F.3d at 658.  The non-moving party may do this by use of affidavits (or declarations), including his or her own, depositions, answers to interrogatories or requests for admissions.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court may only consider admissible evidence when ruling on a motion for summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-75 (9th Cir. 2002). "Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid summary judgment." *Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment.").

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only disputes over the facts that might affect the outcome under the governing law are "material" and will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**B.   Quality's Motion for Summary Judgment**

Mr. Mecum states two claims against Quality: violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86.010 *et seq.* (FAC ¶¶ 4.13-4.18), and

ORDER- 5

negligence (*id.* ¶¶ 4.6-4.12).  The court addresses whether summary judgment is warranted on each claim.

      1.  <u>CPA Violation</u>

To prove that Quality violated the CPA, Mr. Mecum must demonstrate that Quality (1) engaged in an "unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) [which has a] public interest impact; (4) [the plaintiff suffered injury] in his or her business or property; [and] (5) causation." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187-88 (Wash. 2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986)).  Quality argues that the undisputed facts demonstrate that Quality did not engage in an unfair or deceptive act or practice that caused the damages Mr. Mecum alleges.  (Quality MSJ at 3-4, 7.)  The court agrees.

"[T]he practice of a trustee in a nonjudicial foreclosure deferring to the lender on whether to postpone a foreclosure sale and thereby failing to exercise its independent discretion as an impartial third party with duties to both parties is an unfair or deceptive act or practice and satisfies the first element of the CPA." *Klem*, 295 P.3d at 1190.  Mr. Mecum contends Quality unlawfully deferred to Wells Fargo.  (Mecum MSJ at 12.)  The court previously rejected Quality's motion for judgment on the pleadings on this issue, concluding that "Mr. Mecum adequately alleges that Quality failed to exercise independent discretion." (3/19/16 Order at 20.)

The facts, however, do not support Mr. Mecum's allegations.  When Mr. Mecum called Quality on the morning of the foreclosure sale, he indicated that the sale should be postponed because Wells Fargo was considering a further loan modification.  (FAC

¶ 3.26.)  However, Wells Fargo unequivocally indicated to Quality that this was not the case.  (Martin Decl. ¶ 5.)  Furthermore, Quality had already continued the sale by the statutory maximum of 120 days, and further delay would have required re-noticing the sale.  *See* RCW 61.24.040(6).  The record contains no information that obligated Quality to postpone the sale based upon its duty of good faith—a duty that Quality owed not only to Mr. Mecum but also to Wells Fargo.  *Cox v. Helenius*, 693 P.2d 683, 686 (Wash. 1985).  This case differs from *Klem*, in which the defendant falsely notarized foreclosure documents and had an agreement with the lenders requiring lender approval to postpone a foreclosure sale.  295 P.3d at 1182-83.  Here, Quality investigated the only possible reason to postpone the sale that Mr. Mecum provided, and only after concluding that Mr. Mecum's representation was inaccurate did Quality proceed with the sale.

In the alternative, Mr. Mecum posits that Quality committed an unfair or deceptive act "by providing him with false and misleading information that only the bank could postpone a sale and that [Quality] had to have the bank's approval to postpone a sale." (Mecum MSJ at 12 (citing Mecum Decl. at 5).)  However, this alternative framing of Mr. Mecum's CPA claim fails on the causation element because a factfinder could not reasonably conclude that this behavior diminished Mr. Mecum's efforts to prevent foreclosure or impacted Quality's decision not to postpone the sale.  (*Cf.* Mecum Decl. ¶ 14 (indicating that Mr. Mecum "believe[s]" that Quality made these representations to mislead him and "accept that nothing could be done to postpone the trustee's sale").)  Mr. Mecum called Quality back to advocate for postponement a mere 40 minutes after Quality indicated its powerlessness to postpone the sale.  (FAC ¶¶ 3.25-3.26.)  This

ORDER- 7

second call spurred Quality's deeper dive into Mr. Mecum's situation, which included contacting Wells Fargo.  (*Id.* at 3.26; Martin Decl. ¶ 5.)  The court therefore concludes that any misrepresentations Quality made during Mr. Mecum's initial call did not cause the damages that Mr. Mecum asserts and cannot support his CPA claim.

The undisputed evidence fails to support a reasonable inference that Quality engaged in an unfair or deceptive act that caused the damages Mr. Mecum alleges.  Quality is therefore entitled to summary judgment on Mr. Mecum's CPA claim.

        2.  <u>Negligence</u>

To prove negligence, Mr. Mecum must show duty, breach, causation, and damages.  *See, e.g.*, *Lowman v. Wilbur*, 309 P.3d 387, 389 (Wash. 2013).  Quality contends the undisputed facts demonstrate that Quality breached no duty toward Mr. Mecum.  (Quality MSJ at 3-6.)  For reasons similar to those that precluded Mr. Mecum's CPA claim, *see supra* § III.B.1., the court agrees.

Washington's Deed of Trust Act ("DTA"), RCW ch. 61.24, imposes a duty upon Quality, as the trustee, to act in good faith toward "the borrower, beneficiary, and grantor."  RCW 61.24.010(4); *see also Klem*, 295 P.3d at 1187.  This court has previously treated this duty as supporting a claim for negligence.  (3/19/16 Order at 16 & n.11.)  Mr. Mecum contends that Quality breached this duty when it deferred to Wells Fargo.

As the court has concluded above, the evidence does not support Mr. Mecum's position.  Quality contacted Wells Fargo to inquire whether the bank was considering another loan modification for Mr. Mecum.  (Martin Decl. ¶¶ 5-6, Ex. A.)  Contrary to Mr.

ORDER- 8

Mecum's representations to Quality, Wells Fargo was not considering such a modification. (*Id.*) Accordingly, Quality declined to postpone the sale. This decision comported with its mutual duties to Mr. Mecum and Wells Fargo under the DTA. *See* RCW 61.24.010(4); *supra* § III.B.1.

Mr. Mecum makes the additional argument that Quality breached its duty of good faith by not postponing the sale or performing further inquiry upon learning of an erroneous bankruptcy status that Wells Fargo had placed on Mr. Mecum's account. (Mecum MSJ at 10.) A trustee may not defer to a lender in determining whether to postpone a nonjudicial foreclosure sale. *See Klem*, 295 P.3d at 1189-90. However, Mr. Mecum's position, if adopted, would place a duty upon the trustee to second-guess a lender's loan modification decisions. The court declines to extend Quality's duty of good faith to Mr. Mecum in that fashion. Concluding otherwise would improperly subjugate the trustee's duty of good faith to the lender to its duty of good faith to the borrower. *See id.* at 1189. Only after learning of Wells Fargo's decision not to modify Mr. Mecum's loan did Quality decline to postpone the foreclosure sale. (Martin Decl. ¶¶ 5-6, Ex. A.) In so doing, Quality breached no duty owed to Mr. Mecum.

The undisputed evidence fails to support a reasonable inference that Quality breached a duty to Mr. Mecum. Quality is therefore entitled to summary judgment on Mr. Mecum's negligence claim.[3]

---

[3] The court has concluded that Quality is entitled to summary judgment on both of Mr. Mecum's claims against Quality and therefore denies Mr. Mecum's motion for summary judgment. The court also notes that Mr. Mecum's citations to his unverified amended complaint

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Quality's motion for summary judgment (Dkt. # 24), DENIES Mr. Mecum's motion for summary judgment (Dkt. # 26), and DISMISSES Mr. Mecum's claims against Quality WITH PREJUDICE.

Dated this 6th day of July, 2016.

JAMES L. ROBART
United States District Judge

---

provide deficient factual support at the summary judgment stage. Although a defendant, such as Quality, may cite allegations in the plaintiff's unverified complaint to support its motion for summary judgment, *see supra* n.2, a plaintiff may use only a verified complaint to support or oppose summary judgment, *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (citing 28 U.S.C. § 1746).